Filed 12/14/21  P. v. Adame CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ORACIO ADAME, <br><br> Defendant and Appellant. | F080654 <br><br> (Super. Ct. No. VCF268422A) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Kathryn T. Montejano, Judge.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Nikta Allami, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Detjen, J. and Snauffer, J.

**INTRODUCTION**

In 2014, a jury found petitioner Oracio Adame guilty of the first degree murder of Huber Barron.[1]  (Pen. Code,[2] § 187, subd. (a).)  For this offense and related enhancements, he was sentenced to a term of 50 years to life.

In 2019, petitioner filed a petition seeking resentencing pursuant to section 1170.95.  The trial court denied the petition on the ground petitioner failed to make a prima facie showing he was eligible for relief.

Petitioner contends the trial court erred in failing to appoint counsel to represent him on the petition.  He also contends he set forth a prima facie claim for relief and the court erred in reviewing the record of his conviction to conclude otherwise.  We agree the court erred in disposing of the petition before ensuring petitioner was represented by counsel.  However, we conclude the error was not prejudicial because the record of conviction – which properly was considered – establishes petitioner is ineligible for resentencing as a matter of law.  Accordingly, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

This court previously summarized the facts underlying petitioner's offense as follows:

> "On the morning of May 6, 2012, Joseph [C.[3]], Huber Barron, and brothers Rafael [M.] and Guadalupe [M.] were visiting the graves of friends and family at Smith Mountain Cemetery in Dinuba, when [petitioner] and several other people pulled up in a blue Impala.  [Petitioner] was in the backseat, directly behind the driver.  [Petitioner], who was a Sureño, and Barron, who associated with Norteños, had had problems for years and would 'mad dog' — stare in a threatening manner at — each other.

---

[1]    Petitioner was convicted of additional offenses, as described below.

[2]    Undesignated statutory references are to the Penal Code.

[3]    Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names.  No disrespect is intended.

"[Petitioner] and his companions got out of the Impala, and one of them challenged Barron's group by aggressively asking, 'What's up?' They walked toward Barron's group as if to surround them. [Petitioner] appeared angry, like he wanted to fight. Guadalupe [M.] saw one of [petitioner's] group lift his shirt and reach for something near his right waistband. Sensing trouble, those in Barron's group started to run. While running, [Joseph] and the [M.] brothers heard three to five shots that sounded the same, fired closely together. [Joseph] turned back around, because Barron screamed his name. [Joseph] ran back to help him. After the shooting, [petitioner's] group got back in the Impala and fled the scene. Jeremiah [V.], a friend of those in Barron's group who was also visiting the cemetery that day, saw the driver of the Impala with a handgun out the window of the car, pointing in Barron's direction. The passenger window where [petitioner] was seated was also down.

"When Guadalupe [M.] saw Barron a few minutes later, Barron was clutching his bloody chest and said he had been shot. Guadalupe [M.] and the others got Barron into the car and started to drive him to the hospital. On the way, [Joseph] called 911 and arranged to meet police and an ambulance.

"Barron suffered three gunshot wounds, one to the center front of his chest, another to two left ribs, and a third to his left arm. He died as a result of massive blood loss caused by the gunshot wound to the chest, which pierced his heart.

"When [petitioner] was first contacted by law enforcement in this case, he admitted associating with Sureño gangs and having the moniker 'Casper.' He acknowledged knowing Barron, and that Barron associated with Northerners, the rivals of Sureños. He also admitted being at Christian [Ma.'s] house in Orange Cove on the day of the shooting, and knowing Nicholas [S.], who drove a blue Impala.

"[Petitioner] presented an alibi defense through family members." (*People v. Adame* (Nov. 30, 2016, F070497) [nonpub. opn.], fns. omitted (*Adame*).)

On March 7, 2014, the Tulare County District Attorney filed an information charging petitioner with the first degree murder of Barron (§ 187, subd. (a); count 1), with the allegations that the murder was committed for the benefit of or in association with a criminal street gang (§ 186.22, subd. (b)), and that a principal personally and intentionally discharged a firearm, proximately causing great bodily injury and death

(§ 12022.53, subds. (d), (e)(1)); active participation in a criminal street gang (§ 186.22, subd. (a); count 2); second degree robbery (§ 211; count 3), with the allegations that the robbery was committed for the benefit of or in association with a criminal street gang (§ 186.22, subd. (b)), and that a principal personally used a firearm (§ 12022.53, subds. (b), (e)(1)); and active participation in a criminal street gang (§ 186.22, subd. (a); count 4).[4]

On September 10, 2014, petitioner pled nolo contendere to count 3 and admitted the associated enhancements, in return for which count 4 was dismissed. (*Adame*, *supra*, F070497.) On September 16, 2014, a jury found petitioner guilty as charged on counts 1 and 2, and found both special allegations to count 1 true. On October 22, 2014, the trial court sentenced petitioner on count 1 to a term of 25 years to life, plus an additional 25 years for the firearm enhancement. On count 3, the court sentenced petitioner to a consecutive term of 13 years. Sentence on count 2 was imposed and stayed. (§ 654.) (*Adame*, *supra*, F070497.)

Petitioner appealed. Relevant here, petitioner argued the jury instructions improperly permitted him to be convicted of first degree premeditated murder under the natural and probable consequences doctrine, in contravention of *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), abrogated on another ground by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (see *Chiu*, at pp. 158-159 ["[A]n aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine. Rather, his or her liability for that crime must be based on direct aiding and abetting principles."]). This court acknowledged the jury was instructed on the natural and probable consequences doctrine, but noted the jury also was instructed that the natural and probable consequences doctrine applied to second degree murder. The prosecutor's argument likewise suggested the natural and probable consequences doctrine applied only

---

[4] Counts 3 and 4 arose out of an incident unrelated to the murder of Barron.

4.

to second degree murder.  The jury additionally was instructed that petitioner was guilty of first degree murder if " '*he* acted willfully, deliberately, and with premeditation.' " Thus, even assuming some ambiguity in the instructions, this court concluded there was "no reasonable likelihood jurors understood the instructions" to permit a conviction for first degree premeditated murder under the natural and probable consequences doctrine. We therefore affirmed the judgment.[5]  (*Adame*, *supra*, F070497.)

On October 18, 2019, petitioner, in propria persona, filed a petition for resentencing pursuant to section 1170.95.  In the form petition, petitioner stated that a complaint, information, or indictment was filed against him that allowed him to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine; he was convicted of first or second degree murder at trial; and he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019.  He further averred that he was not the actual killer, he did not act with intent to kill, and the victim was not a peace officer in the performance of his or her duties.

On October 22, 2019, the court calendared the petition for an " 'informal' response."

The matter came on for hearing on November 20, 2019.  Petitioner was not present at the hearing but was represented by a deputy public defender who stated, "We have just now been appointed on this case," and requested a continuance.  The People argued petitioner would be unable to establish a prima facie claim for resentencing as this court's opinion "indicates that he was convicted on his own mental state" of malice aforethought. The matter was continued.

---

[5]    We also ordered certain corrections to the abstracts of judgment and sentencing minutes that are not relevant to the instant appeal.  (*Adame*, *supra*, F070497.)

The matter again came on for hearing on January 15, 2020. The assigned deputy public defender informed the court that the Public Defender's Office previously declared a conflict in petitioner's original case and was having difficulty retrieving the file to determine whether a conflict prevented the office from representing petitioner on the petition. The People argued petitioner was not entitled to counsel unless and until he made a prima showing that he was entitled to resentencing. The People further argued petitioner had not, and indeed could not, make a prima facie showing because this court previously determined petitioner was convicted as an aider and abettor to the murder who acted with intent to kill. The court asked the deputy public defender to respond to this argument, "[n]ot as the attorney for [petitioner]," but "[a]s a friend of the court." The deputy public defender agreed that "intent to kill as a general proposition puts . . . a petitioner outside the purview of [section] 1170.95." The court then found that petitioner had not made a prima facie case and was not entitled to appointed counsel. The court therefore denied the petition, stating it was doing so without prejudice.

This timely appeal followed.

## DISCUSSION

### I.    Senate Bill No. 1437 (2017-2018 Reg. Sess.) and Section 1170.95

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at

6.

pp. 842-843.)  Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[6]  (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Finally, the bill "added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above."[7]  (*Gentile*, at p. 843.)

"Section 1170.95 lays out a process for a person convicted of felony murder or murder under a natural and probable consequences theory to seek vacatur of his or her conviction and resentencing."  (*Gentile*, *supra*, 10 Cal.5th at p. 853.)  First, "an offender must file a petition in the sentencing court averring that:  '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;]  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;]  [¶]  [and] (3) The petitioner could

---

**6**　Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer.  (§ 189, subd. (f); accord, *People v. Daniel* (2020) 57 Cal.App.5th 666, 672.)

**7**　The Legislature recently passed, and the Governor signed, a bill amending section 1170.95.  (Sen. Bill No. 775 (2021-2022 Reg. Sess.).)  The amendments are not yet effective (Cal. Const., art. IV, § 8, subd. (c)(1)) and, in any event, would not alter our analysis of the issues raised in this petition.  We quote from the version of section 1170.95 presently in effect.

not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subd[]. (a)(1)-(3); see also § 1170.95, subd. (b)(1)(A).) Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' (§ 1170.95, subd. (b)(1)(C).) If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' (§ 1170.95, subd. (b)(2).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 959-960 (*Lewis*).)

Where the petition complies with the requirements of section 1170.95, subdivision (b)(1), counsel must be appointed, if requested. The prosecutor must file a response and the petitioner may file a reply. The trial court must then review the petition to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c); *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.) In making this determination, the court may rely on the record of conviction. (*Lewis*, at pp. 970-971.) However, the prima facie inquiry is limited and, at this stage of the proceedings, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at pp. 971-972.)

If the court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and to resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d)(1).) At the hearing, the prosecution must 'prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).) 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' (*Ibid.*)" (*Gentile*, *supra*, 10 Cal.5th at p. 853.)

To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an

evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## II. Petitioner was not Prejudiced by the Trial Court's Errors

Petitioner contends the trial court erred in failing to appoint counsel to represent him on the petition. He also contends he set forth a prima facie claim for relief and the court erred in reviewing the record of his conviction to conclude otherwise. We conclude the trial court erred in disposing of the petition without following the procedures required by section 1170.95, subdivision (c), including the appointment of counsel. However, as we explain, petitioner was not prejudiced by these errors because the record establishes he is ineligible for resentencing as a matter of law.

### A. The Trial Court Erred

Until recently, some courts had held that section 1170.95, subdivision (c) requires a petitioner to make two distinct prima facie showings, and a petitioner is not entitled to appointed counsel until the first of such showings is satisfied. (See *Lewis*, *supra*, 11 Cal.5th at pp. 961-963.) It appears the trial court relied on this line of authority to dispose of the instant petition without ensuring petitioner had conflict-free counsel.

Our Supreme Court recently rejected this approach and held that section 1170.95, subdivision (c) describes "only a single prima facie showing." (*Lewis*, *supra*, 11 Cal.5th at p. 962.) Accordingly, the sequential procedure under section 1170.95, subdivision (c) is as follows: "a complying petition is filed; the court appoints counsel, if requested; the issue is briefed; and then the court makes one (not two) prima facie determination." (*Lewis*, at p. 966, fn. omitted.) This procedure was not followed in the instant case. Although it appears counsel was appointed for petitioner, counsel was not afforded an opportunity to determine whether a conflict prevented him from representing petitioner. Additionally, the matter was not briefed, and it was heard and disposed of without input from petitioner's appointed counsel.

9.

Appointment of counsel and an opportunity for briefing were both required by section 1170.95, subdivision (c). (See *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.) The court erred in disposing of the petition without complying with these procedures. We may affirm only if petitioner was not prejudiced by the error. To demonstrate prejudice, petitioner must show that, absent the errors, it is reasonably probable his petition would not have been denied without an evidentiary hearing. (*Lewis*, at pp. 972-974.) As we explain, we conclude petitioner cannot demonstrate prejudice because the record establishes he is ineligible for resentencing as a matter of law.

## B.     Petitioner is Ineligible for Resentencing as a Matter of Law

To be eligible for relief pursuant to section 1170.95, petitioner must have been convicted of felony murder or murder under a natural and probable consequences theory. (§ 1170.95, subd. (a); accord, *Gentile*, *supra*, 10 Cal.5th at p. 853.) As stated in petitioner's direct appeal, petitioner's jury "was instructed, with respect to count 1, on first and second degree murder (including express and implied malice), and premeditation and deliberation. The People did not assert [petitioner] was the actual shooter. Accordingly, jurors were also instructed on directly aiding and abetting murder, aiding and abetting battery with murder as a natural and probable consequence, and conspiracy to commit murder."[8] (*Adame*, *supra*, F070497, fn. omitted.) Thus, the issue before us is whether the record suggests the jury may have convicted petitioner of first degree murder under a natural and probable consequences theory. As we explain, the jury instructions and the arguments of counsel made clear that the natural and probable consequences theory applied only to the included offense of second degree murder. Because petitioner was convicted of first degree murder, he could not have been convicted under a natural

---

**8**     Petitioner argues the trial court and this court are limited to reviewing the petition itself, and may not consider the record of conviction. Our Supreme Court recently held otherwise. (*Lewis*, *supra*, 11 Cal.5th at pp. 970-972.)

and probable consequences theory. Accordingly, he is ineligible for resentencing as a matter of law.

To further explain our reasoning, we briefly summarize the law we applied in petitioner's direct appeal. A few months before petitioner's trial, our Supreme Court issued its decision in *Chiu*, which eliminated liability for first degree premeditated murder under the natural and probable consequences doctrine. (*Chiu*, *supra*, 59 Cal.4th at pp. 158-159, 166.) Our Supreme Court held instead that only second degree murder is commensurate with the culpability for aiding and abetting a target crime that would naturally, probably, and foreseeably result in murder.[9] (*Chiu*, at p. 166.) As we stated in petitioner's direct appeal, it was apparent that the court and counsel in petitioner's trial were aware of *Chiu*. (*Adame*, *supra*, F070497.)

Ultimately, the court instructed the jury on the natural and probable consequences doctrine as follows: "To prove that the defendant is guilty of MURDER, the People must prove that: [¶] 1. The defendant is guilty of BATTERY; [¶] 2. During the commission of BATTERY a co-participant in that BATTERY committed the crime of MURDER; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the MURDER was a natural and probable consequence of the commission of the BATTERY." However, in a later instruction on battery, the court instructed the jury: "The defendant is not charged with battery. This offense is the target offense for purposes of the natural and probable consequences doctrine *as it relates to second degree murder*." (Italics added.) With regard to first degree murder, the court instructed the jury, "The defendant is guilty of first degree murder if the People have proved that *he* acted willfully, deliberately, and

---

[9] As explained above, Senate Bill No. 1437 (2017-2018 Reg. Sess.) later eliminated this form of imputed malice murder by amending section 188 to provide: "Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

with premeditation.  The defendant acted willfully if *he* intended to kill.  The defendant acted deliberately if *he* carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill.  The defendant acted with premeditation if *he* decided to kill before completing the act that caused death." (Original italics omitted, italics added.)

The prosecutor's closing argument likewise suggested the natural and probable consequences doctrine applied only to the lesser offense of second degree murder, whereas first degree murder required a finding that defendant himself acted willfully, deliberately, and with premeditation:

> "There are two forms of murder in our state:  second-degree murder and first-degree murder, and we're going to talk about both.  We're going to start with second-degree murder because it's the lesser and move up to the greater as we discuss it.
>
> "So in this case for second-degree murder, we're talking at the bare minimum of what we know in this case *using what's called the 'Natural and Probable Consequences Doctrine.'*"  (Italics added.)

The prosecutor went on to explain the People's theory of second degree murder, namely that petitioner accompanied gang members to commit a battery, and that murder was a natural and probable consequence of that offense.  The prosecutor then continued:

> "But, ladies and gentlemen, that's not all we have in this case.  So we know at the very least second-degree murder has been proven.
>
> "So what's the difference between second-degree and first-degree?  Well, to show first-degree murder, so when the defendant was aiding and abetting in the death of Huber Barron, he acted willfully.  He, himself, intended to kill.  He, himself, carefully weighed the considerations for and against the choice and knowing those consequences decided to kill.  That's deliberately.  [¶]  Premeditation.  When the defendant decided to kill before committing . . . the act that caused death. . . .  [¶] . . . [¶]
>
> "*So looking at what this defendant did, what do we have that shows he, himself, . . . had that own desire to kill Huber Barron?*"  (Italics added.)

12.

In petitioner's direct appeal, we found no error in the court's instructions on the natural and probable consequences doctrine. Furthermore, even assuming some ambiguity in the instructions, we concluded it was clear to the jury that "a verdict of first degree premeditated murder could only be predicated on defendant's own mental state, and that the natural and probable consequences doctrine applied to second, not first, degree murder." We found no reasonable likelihood the jurors understood the instructions to permit a conviction for first degree murder under the natural and probable consequences doctrine. (*Adame*, *supra*, F070497.)

In light of the foregoing, the record of conviction affirmatively and unequivocally establishes that petitioner was not convicted of first degree murder under a natural and probable consequences theory. Accordingly, petitioner is ineligible for resentencing relief as a matter of law. We therefore conclude there is no reasonable probability petitioner would have been afforded an evidentiary hearing had he been represented by counsel, and the court's error in failing to follow the procedures set out in section 1170.95, subdivision (c) was harmless. (*Lewis*, *supra*, 11 Cal.5th at pp. 973-974.) The petition was properly denied.

## DISPOSITION

The order is affirmed.

13.